Rel: July 2, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2026

_____

### SC-2025-0247

_____

## Ex parte City of Tuskegee et al.

## PETITION FOR WRIT OF MANDAMUS

## (In re: Amanda Busby et al.

## v.

## City of Tuskegee et al.

## (Macon Circuit Court: CV-24-900059)

_____

### SC-2025-0251

_____

**Ex parte JENOPTIK Smart Mobility Solutions, LLC, f/k/a Traffipax, LLC; and JENOPTIK North America, Inc.**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Amanda Busby et al.**

**v.**

**City of Tuskegee et al.)**

**(Macon Circuit Court: CV-24-900059)**

SHAW, Justice.

These consolidated mandamus proceedings stem from the passage and implementation of Ordinance No. 2023-01 ("the ordinance"), a local ordinance of the City of Tuskegee ("the City") allowing the use of automated photographic-enforcement devices to enforce traffic laws within the City's corporate limits. The plaintiffs below -- Amanda Busby, Michael Johnson, Flolaidra Todd, Martez Graham, E. Kennedy, Samuel Peterson, Martha Washington, and Betty Ligon ("the plaintiffs") -- are all individuals who were cited for traffic violations under the ordinance. As a result, the plaintiffs filed suit against various entities and individuals, seeking declaratory and injunctive relief and damages.

In case no. SC-2025-0247, the City; Ulysses Roberts, the city manager for the City; Lawrence Haygood, the mayor of the City; and Christopher Lee, Johnny Ford, Norma Jackson, and Orlando Whitehead, the members of the City of Tuskegee City Council (all of the foregoing are referred to collectively as "the City defendants"), who were named as defendants in the plaintiffs' amended complaint,[1] petition for a writ of mandamus directing the Macon Circuit Court to vacate its order denying the motion of the City defendants seeking to dismiss the plaintiffs' claims. In case no. SC-2025-0251, JENOPTIK Smart Mobility Solutions, LLC, f/k/a Traffipax, LLC; and JENOPTIK North America, Inc. (referred to collectively as "JENOPTIK"), the entities allegedly responsible for the installation, maintenance, and monitoring of the automated photographic-enforcement devices, who are also named defendants, separately petition for similar relief. We grant the petitions in part and deny them in part.

Facts and Procedural History

---

[1]The City was named as a defendant in the plaintiffs' original complaint; the city manager, the mayor, and the city-council members, in both their official and individual capacities, were added as defendants by an amendment to the plaintiffs' original complaint.

In February 2023, the City passed the ordinance; it provided for both photographic traffic-signal enforcement and photographic vehicle-speed enforcement. The ordinance vested the City's municipal court with jurisdiction to conduct administrative hearings regarding all violations of the ordinance, and violations of the ordinance were deemed civil violations subject to a fine. As to that administrative process, the ordinance provided:

> "SECTION 5.2 REQUEST FOR ADJUDICATIVE HEARING
>
> "A person who receives a notice of violation may contest the imposition of the [F]ine by submitting a request for an administrative hearing of the Civil Violation, in writing, within 15 days of the 10th day after the date the notice of violation is mailed. Upon receipt of a timely request, [JENOPTIK] or its designee shall notify the person of the date and time of the administrative hearing by U.S. mail. The Fine shall not be collected if, after a hearing, the Municipal Judge sitting as the Administrative Judge and hearing officer shall enter a finding of no liability.
>
> "SECTION 5.3 FAILURE TO PAY
>
> "Failure to pay a Fine or to contest liability in a timely manner is an admission of liability in the full amount of the Fine assessed in the notice of violation."

Elsewhere, the ordinance stated that if, following an administrative hearing, the municipal judge found the person cited for a violation liable, a fine and court costs could be imposed; it further provided for an appeal

4

to the circuit court. It appears that, following enactment of the ordinance, there was an initial 30-day period when only warning citations were issued.

Thereafter, each of the plaintiffs apparently received, on a date before March 26, 2024, citations for purportedly having violated the posted speed limit. On March 26, 2024, the City passed Resolution No. 2024-36, which "extend[ed] the period of warning citations and established a period of amnesty and pardon for" citations that had issued under the ordinance between February 7, 2024, and April 14, 2024.[2] According to the resolution, any citations issued during that period were "cancelled, voided, nullified and dismissed" and should be considered "as warnings," and any recipient who had already paid any related fine and costs would be "eligible for reimbursement and refunds."

In May 2024, the plaintiffs filed their original complaint against the City and JENOPTIK in the Macon Circuit Court. For the most part, the complaint did not disclose the issuing dates of the plaintiffs' citations and

---

[2]See generally § 12-14-15, Ala. Code 1975, which grants to a municipal mayor the power, among others, to "remit fines and such costs as are payable to the municipality and commute sentences imposed by a municipal court" for violation of municipal ordinances.

failed to indicate who among them, before the filing of the complaint, had paid the fine for the citation or had, instead, opted to pursue -- whether successfully or unsuccessfully -- the administrative process for contesting the citation, as provided for in the ordinance and set out above.

As explained in their complaint, the plaintiffs generally disputed the validity of the traffic-related "findings" cited by the City as necessitating the ordinance. They took further issue with the fact that the ordinance provided for the issuance of citations to a vehicle's owner even when the owner was not operating the vehicle at the time of the alleged traffic violation and the fact that citations were not issued pursuant to a traffic stop initiated by a witnessing law-enforcement officer. Their complaint also cited purported inadequate notice of the devices' locations and raised various constitutional challenges. Accordingly, all the plaintiffs sought, among other relief, a judgment declaring the ordinance unconstitutional and violative of Alabama law, an order enjoining its enforcement and requiring the removal of the devices, and the refund of all fees, costs, and fines collected under the ordinance, with interest.

6

The plaintiffs' original complaint also asserted the following tort claims: negligence, invasion of privacy, and fraud. According to the complaint, the plaintiffs' negligence claim was premised on the purported failure of the City and JENOPTIK to follow Alabama law and procedures regarding the enforcement of traffic laws and the issuance of citations for traffic violations. They further alleged that the City and JENOPTIK had breached alleged duties to provide adequate notice of the devices used to detect violations, to ensure proper maintenance of the devices, to ensure the competence of the devices' operators, and to ensure that any citation issued under the ordinance was issued to the actual violator.

In response to the plaintiffs' original complaint, the City, on July 2, 2024, initially filed a motion to dismiss pursuant to Rule 12(b)(6), Ala. R. Civ. P., on the ground that the complaint failed to state a claim on which relief could be granted.

On July 11, 2024, the City passed Resolution No. 2024-55, which ceased both the issuance of all citations under the ordinance and all related administrative hearings.

The plaintiffs filed their first amended complaint on July 31, 2024. That complaint, while it did not expound upon the factual allegations

7

included in the original complaint, added as defendants the city manager, the mayor, and the city-council members, in both their official and individual capacities, and asserted negligence, invasion-of-privacy, and fraud claims against them. See note 1, supra.

On that same date, JENOPTIK filed a motion to dismiss the plaintiffs' original complaint pursuant to both Rule 9(b) and Rule 12(b), Ala. R. Civ. P. Relying on prior decisions from this Court, JENOPTIK specifically asserted, among other contentions, that, because, before filing the original complaint, each of the plaintiffs had allegedly accepted liability under the ordinance by either paying the fine associated with the citation he or she had received or failing to properly contest liability, there was no justiciable controversy and the trial court therefore lacked subject-matter jurisdiction. In addition, according to JENOPTIK, the action was mooted, the plaintiffs lacked standing, and the trial court was similarly deprived of subject-matter jurisdiction by the fact that the City had voluntarily suspended enforcement of the ordinance and had resolved that any previously imposed fines would be eligible for reimbursement. In its motion, JENOPTIK further disputed that it was a "proper part[y]" to a suit challenging the enforcement of a municipal

8

ordinance; that it owed no duty to the plaintiffs that would support the plaintiffs' negligence claim against it; that the complaint failed to allege conduct by it amounting to an invasion of the plaintiffs' privacy; that the complaint failed to allege any misrepresentation made by it to the plaintiffs; and that it was entitled to a dismissal of the claims against it based on lack of personal jurisdiction and because of improper and/or insufficient service of process.

Thereafter, the City defendants filed, also pursuant to Rule 12(b), a joint motion seeking the dismissal of the plaintiffs' amended complaint. That motion, in addition to other grounds, raised the fact that the City had, in March 2024 -- one month before the filing of the plaintiffs' original complaint -- passed Resolution No. 2024-36, which voided prior citations issued by the devices installed pursuant to the ordinance, deemed such citations warning citations, and provided that all persons who had previously paid the fine for a citation were eligible for reimbursement. Thus, according to the City defendants, the City had voluntarily ceased issuing citations and enforcing the ordinance. Also, the City defendants asserted that, before filing the original complaint, each of the plaintiffs had either accepted liability under the ordinance or had failed to

9

challenge the legality of the ordinance by resorting to the administrative process provided therein. Accordingly, they contended that there was no justiciable controversy and that the plaintiffs' claims were moot under the Declaratory Judgments Act, Ala. Code 1975, § 6-6-220 et seq.

In response, the plaintiffs conceded that a justiciable controversy must exist in order to obtain declaratory relief; however, they maintained that the required controversy existed because, at the time their action was initiated, the City defendants allegedly had not discontinued enforcing the ordinance. They further noted that an exception to the mootness doctrine arises when a matter presents a question of public interest or when the factual scenario is likely to be repeated in the future.

Following a hearing, the trial court denied the motions to dismiss filed by the City defendants and by JENOPTIK. Its order, which did not contain the factual and/or legal conclusions on which the decision was based, did explain that the trial court had, in issuing its ruling, treated the motions as motions to dismiss filed pursuant to Rule 12 and had, in considering the motions, excluded all extraneous attachments.

The City defendants and JENOPTIK separately petitioned this Court for mandamus relief; we subsequently ordered answers and briefs.

10

Standard of Review

> "'"The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus." Ex parte Liberty Nat'l Life Ins. Co., 888 So. 2d 478, 480 (Ala. 2003). However, "[f]or the writ of mandamus to issue '"[t]he right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief."'" Ex parte Vance, 900 So. 2d 394, 398-99 (Ala. 2004).'

"Ex parte Tuscaloosa County Special Tax Bd., 963 So. 2d 610, 611-12 (Ala. 2007).

> "'This Court has consistently held that the writ of mandamus is an extraordinary and drastic writ and that a party seeking such a writ must meet certain criteria. We will issue the writ of mandamus only when (1) the petitioner has a clear legal right to the relief sought; (2) the respondent has an imperative duty to perform and has refused to do so; (3) the petitioner has no other adequate remedy; and (4) this Court's jurisdiction is properly invoked. Ex parte Mercury Fin. Corp., 715 So. 2d 196, 198 (Ala. 1997).'

"Ex parte Flint Constr. Co., 775 So. 2d 805, 808 (Ala. 2000)."

Ex parte Safeway Ins. Co. of Alabama, Inc., 990 So. 2d 344, 348 (Ala. 2008). See also Ex parte Alamo Title Co., 128 So. 3d 700, 707 (Ala. 2013) ("'"[A] petition for a writ of mandamus is the proper device by which to

11

challenge the denial of a motion to dismiss for lack of <u>in personam</u> jurisdiction."'" (citations omitted)).

Discussion

I. <u>Mootness of Claims Challenging the Legality of the Ordinance</u>

In their respective petitions, the City defendants and JENOPTIK challenge the trial court's denial of their motions to dismiss on the basis of the lack of a justiciable controversy and/or mootness grounds. Specifically, both petitions contend that each of the plaintiffs either paid the fine associated with the citation he or she was issued pursuant to the ordinance or failed to seek relief by resorting to the administrative process provided in the ordinance and, nonetheless, was reimbursed or is eligible for reimbursement for the payment of the fine. Thus, they argue, the trial court was deprived of subject-matter jurisdiction over the plaintiffs' claims and those claims are due to be dismissed.

In <u>Woodgett v. City of Midfield</u>, 319 So. 3d 1231 (Ala. 2020), this Court noted that, following authorization by the Alabama Legislature, the City of Midfield ("Midfield") had adopted Ordinance No. 2011-4, which similarly provided for the automated photographic enforcement of red-light violations within the corporate limits of Midfield and the

12

imposition of related civil penalties for those motorists whose vehicles were photographed running a red light. 319 So. 3d at 1233. Thereafter, two named plaintiffs, on behalf of a putative class of individuals who had all received notices of such a violation, sued both Midfield and the entity responsible for the installation of its traffic-light-enforcement cameras. Specifically, their complaint sought a judgment declaring the underlying legislative act and Midfield's ordinance unconstitutional, an injunction prohibiting further citations using automated photographic equipment, and the refund of all fines and fees collected from persons who had previously been cited. Id. at 1234.

In the ensuing appeal from the trial court's judgment dismissing the plaintiffs' claims in Woodgett, the Court explained:

"It is undisputed that the plaintiffs did not seek relief from the notices of violations by invoking the judicial procedures provided for in the Act and the ordinance.

"This Court has stated:

"'"There must be a bona fide existing controversy of a justiciable character to confer upon the court jurisdiction to grant declaratory relief under the declaratory judgment statutes, and if there was no justiciable controversy existing when the suit was commenced the trial court had no jurisdiction." State ex rel. Baxley v. Johnson, 293 Ala. 69, 73, 300 So. 2d 106, 110 (1974).

13

"'"Unless the trial court has before it a justiciable controversy, it lacks subject matter jurisdiction and any judgment entered by it is void <u>ab initio</u>."'" <u>Sustainable Forests, L.L.C. v. Alabama Power Co.</u>, 805 So. 2d 681, 683 (Ala. 2001) (quoting <u>Hunt Transition & Inaugural Fund, Inc. v. Grenier</u>, 782 So. 2d 270, 272 (Ala. 2000), quoting in turn <u>Ex parte State ex rel. James</u>, 711 So. 2d 952, 960 n. 2 (Ala. 1998)).  "A moot case lacks justiciability." <u>Crawford[ v. State]</u>, 153 S.W.3d [497] at 501 [(Tex. App. 2004)]. Thus, "[a]n action that originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised in it have become moot by subsequent acts or events." <u>Case[ v. Alabama State Bar</u>, 939 So. 2d [881] at 884 [(Ala. 2006)] (citing <u>Employees of Montgomery County Sheriff's Dep't v. Marshall</u>, 893 So. 2d 326, 330 (Ala. 2004)).'

"<u>Chapman v. Gooden</u>, 974 So. 2d 972, 983-84 (Ala. 2007)."

319 So. 3d at 1237 (emphasis added).

Considering those circumstances in <u>Woodgett</u>, which are substantially similar to the circumstances in this case, we held:

"Here, the legislature and the City, respectively, specifically vested the municipal court with original jurisdiction to adjudicate contested notices of violations under the Act and the ordinance within a detailed set of procedures that provides for an adjudicative hearing in the municipal court and an appeal to the circuit court for a trial de novo. Rather than challenging the notices of violations on any grounds, including constitutional and statutory ones, as provided for in the Act and the ordinance by requesting an adjudicative proceeding in the municipal court, the plaintiffs simply accepted liability under the Act and the ordinance by

14

paying the fines.  Once the plaintiffs accepted liability under the Act and the ordinance without challenging the notices of violations, a justiciable controversy no longer existed between the parties.  Sparks [v. Brock & Blevins, Inc., 274 Ala. 147, 145 So. 2d 844 (1962)].  Nothing remained between the parties to be settled because the matter had been determined in the court having jurisdiction over the notices of violations issued pursuant to the Act and the ordinance.  The plaintiffs cannot now use this declaratory-judgment action ... as a substitute for an appeal to challenge the Act and the ordinance on constitutional and statutory grounds after failing to raise such a challenge pursuant to the procedures for doing so set forth by the legislature and the City in the Act and the ordinance.  Sparks, supra. Because no justiciable controversy existed between the parties when the complaint for declaratory relief was filed, the trial court was without subject-matter jurisdiction. Chapman [v. Gooden, 974 So. 2d 972 (Ala. 2007)].  See also Underwood v. Alabama State Bd. of Educ., 39 So. 3d 120, 127 (Ala. 2009)('""There must be a bona fide existing controversy of a justiciable character to confer upon the court jurisdiction to grant declaratory relief under the declaratory judgment statutes, and if there was no justiciable controversy existing when the suit was commenced the trial court had no jurisdiction.'"' (quoting Chapman, 974 So. 2d at 983, quoting in turn State ex rel. Baxley v. Johnson, 293 Ala. 69, 73, 300 So. 2d 106, 110 (1974)))."

319 So. 3d at 1238 (footnote omitted; emphasis added).  See also Mills v. City of Opelika, 320 So. 3d 554, 560-61 (Ala. 2020) (same), Moore v. City of Center Point, 319 So. 3d 1223, 1231 (Ala. 2020) (same), and City of Montgomery v. Hunter, 319 So. 3d 1213, 1223 (Ala. 2020) (same).

In fact, Moore, supra, further held that either "accept[ing] liability under the ... ordinance by paying the fines" or "accept[ing] liability under

15

the ... ordinance by failing to challenge ... liability within the time and in the manner provided" would "settle[] the matter and moot[] the controversy between the parties." 319 So. 3d at 1231. See also Hunter, 319 So. 3d at 1223 (explaining that, when one plaintiff had accepted liability under the ordinance by paying the fine and the other plaintiff, although he had not paid the fine, had "nonetheless accepted liability by taking no action to challenge the ... ordinance" as provided therein, both "plaintiffs' acceptance of liability ... settled the matter and mooted the controversy between the parties").

Here, regarding the identity and legal standing of the plaintiffs to challenge the ordinance, the original complaint alleged only the following:

> "1. Plaintiffs are persons who received traffic citations for exceeding the posted speed limit based solely on photographic enforcement devices pursuant to [the] Ordinance. ...
>
> "2. Plaintiff Amanda Busby is over the age of 19 years and is a resident citizen of Auburn, Alabama. Number of tickets (2).
>
> "3. Plaintiff Michael Johnson is over the age of 19 years and is a resident citizen of Tuskegee, Alabama. Number of tickets (11).

"4.     Plaintiff, Flolaidra Todd is over the age of 19 years and is a resident citizen of Tuskegee, Alabama. Number of tickets (3).

"5.     Plaintiff Martez Graham is over the age of 19 years and is a resident citizen of Tuskegee, Alabama. Number of tickets (1).

"6.     Plaintiff E. Kennedy is over the age of 19 years and is a resident citizen of Montgomery, Alabama. Number of tickets (1).

"7.     Plaintiff Samuel Peterson is over the age of 19 years and is a resident citizen of Opelika, Alabama. Number of tickets (1).

"8.     Plaintiff Martha Washington is over the age of 19 years and is a resident citizen of Montgomery, Alabama. Number of tickets (3).

"9.     Plaintiff Betty Ligon, is over the age of 19 years and is a resident citizen of Tuskegee, Alabama. Number of tickets (2)."

Elsewhere, the plaintiffs' original complaint explained that plaintiff Michael Johnson had received, among his multiple citations, a warning notice on February 26, 2024, that had no accompanying fine. It also indicated that plaintiff Martha Washington had paid the $25 fee required to contest a citation and had received a hearing but did not indicate whether, following that hearing, she had been found liable and required

17

to pay the accompanying fine or whether, if she paid the fine, she later sought reimbursement.

The original complaint also included the following reference to Resolution 2024-36, which was passed by the City following adoption of the ordinance:

> "88.  Upon information and belief, without Amending [the] Ordinance ..., the City has suspended enforcement of issuing citations for 30 days.  The City also has changed the procedures for contesting a citation by now allowing a person to contest the citation by requesting a hearing in writing on a form provided by the Tuskegee Municipal Court. The procedure has not been amended into the Ordinance.
>
> "89. The City has also suspended payment of the $25.00 fee that some have had to pay [to receive a hearing as provided on the citations]."

The foregoing facts, which are similar to the facts in the above-cited cases, establish each of <u>the plaintiffs' acceptance of liability</u> under the ordinance <u>either</u> by the payment of the fine for which the complaint sought reimbursement <u>or</u> by the failure to challenge the ordinance by resorting to the administrative process provided therein.[3]  Further, the

---

[3]It appears that, regarding the plaintiffs' claims stemming from the adoption and enforcement of the ordinance, the City defendants and JENOPTIK sought to obtain dismissal pursuant to Rule 12(b)(1), Ala. R. Civ. P., based on the trial court's alleged lack of subject-matter jurisdiction.  See <u>Ex parte Safeway Ins. Co. of Alabama, Inc.</u>, 990 So. 2d

allegations in their complaint go one step beyond the allegations made in the above-cited cases and appear to concede that the City voluntarily discontinued its enforcement of the citations issued pursuant to the ordinance and/or waived the fee required to administratively challenge them -- a fact that provides the majority of the relief sought by the plaintiffs. In other words, to the extent that the plaintiffs' complaint sought declaratory and injunctive relief, any such claim was mooted by the facts that each of the plaintiffs either paid the fine or failed to challenge the citation through the prescribed administrative-appeal process and that, nonetheless, the citations were nullified and any remitted payments were refunded (or at least subject to reimbursement) pursuant to the subsequent resolutions. Thus, the liability of each plaintiff under the ordinance was either accepted before the filing of the original complaint or was extinguished by the passage of Resolution No. 2024-36, passed in March 2024, which entitled each plaintiff to a refund of any fine paid, or by the passage of Resolution No. 2024-55, passed in

---

344, 350 (Ala. 2008) ("[A] Rule 12(b)(1) motion can allege either a facial challenge, in which the court accepts as true the allegations on the face of the complaint, or a factual challenge, which requires consideration of evidence beyond the face of the complaint.").

July 2024, pursuant to which the City ceased both the issuance of all citations under the ordinance and any related administrative hearings. See, e.g., Chapman v. Gooden, 974 So. 2d 972, 984 (Ala. 2007) ("'[A]n action that originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised in it have become moot by subsequent acts or events.'" (citations omitted)).

Accordingly, just as in the above-cited cases,

"[t]he plaintiffs' acceptance of liability under ... the ordinance, without challenging the notices of violations within the time and manner provided for ... in the ordinance, settled the matter and mooted the controversy between the parties. Because a justiciable controversy no longer existed between the parties, the trial court had no jurisdiction over the plaintiffs' subsequently filed declaratory-judgment action challenging ... the ordinance."

Woodgett, 319 So. 3d at 1239.

Notably, in their answers filed in this Court, the plaintiffs do not address the implication of the above-cited cases on their claims, do not seek to have those cases overruled, and do not argue that any recognized exception to the mootness doctrine -- including the public-interest exception they raised to the trial court -- exists in this case. Instead, the plaintiffs attempt to distinguish their claims from those asserted in the above-cited cases by maintaining that, unlike the plaintiffs in those

20

cases, they had no means by which they could contest or pay the citations once those citations were, through the actions of the City defendants, either dismissed or converted to mere warnings and that, as a result, they had "no citations to contest" or to pay. That admission, however, further underscores the lack of a justiciable controversy -- cancellation of the citations, a refund of fees and costs, and the discontinuation of enforcement of the ordinance moots the controversy.

II.  The Plaintiffs' Tort Claims

Regarding the plaintiffs' tort claims, however, we reach a different result. Those claims appear to be based on allegations that the citations issued under the ordinance -- regardless of their legality -- independently and tortiously caused damage to certain plaintiffs. Specifically, the plaintiffs' negligence claim alleged breach of alleged duties to provide adequate notice of the devices, to ensure that citations were lawfully issued to the actual violator, to properly maintain the devices, and to properly train all operators. Their invasion-of-privacy and fraud claims were premised on the allegation that the City defendants and JENOPTIK had improperly shared the fact of the violation with "other entities" and "outside agencies," purportedly contrary to representations contained in

21

the ordinance. In particular, as to their invasion-of-privacy and fraud claims, some plaintiffs alleged that the dissemination of the fact of their violations to third parties, despite purported contrary representations in the ordinance, not only had "plac[ed] Plaintiffs in a negative light and/or position in the public eye," but also had consequences beyond any civil penalty imposed by the ordinance:

> "94. ... Plaintiff Flolaidra Todd ... received 3 traffic citations under [the] Ordinance on February 22, 2024, February 25, 2024, and February 26, 2024. None of these citations were due to be paid before March 25, 2024, March 28, 2024, or March 31, 2024, respectively.

> "95. However, Plaintiff Todd was terminated from her employment, Southern Cross[,] by letter dated March 25, 2024.

> "96. The letter stated that Ms. Todd was terminated for receiving 3 speeding tickets for traveling 20 miles over the speed limits, prior to her cases being contested or adjudicated.[4]

> "97. At the time of receiving his citation, Plaintiff Martez Graham was in a rental vehicle while his vehicle was being repaired. The citation accusing Plaintiff Graham of speeding was sent to the rental car company. As a result, Plaintiff Graham was told that he could not pick his personal vehicle up until he paid the citation. To that end Plaintiff Graham was forced to pay the ticket in order to get his

---

[4]Presumably, Todd's employer was the owner of the vehicle that she was operating at the time she received the citations and, accordingly, received the notices of the citations.

personal vehicle back. As a result he was not afforded an opportunity to exhaust his due process rights because doing so would result in additional storage fees on his personal vehicle.

"98. Plaintiff Amanda Bush was threatened with termination of employment after her employer received citations for speeding."

As to these three individual plaintiffs, the complaint sought attendant damages for loss of employment, mental anguish, emotional distress, and "damages to reputation."

Nothing before us suggests that the availability of the administrative process outlined in the ordinance, the failure to use that process, the payment of fines associated with the citations, or the discontinuation of the ordinance's enforcement moots these three plaintiffs' claims.[5] Therefore, unlike the ordinance-based claims, it has not been demonstrated that these plaintiffs' tort-based claims would have been mooted by the City's passage of subsequent resolutions affecting the ordinance's enforcement, by the failure to challenge the citations pursuant to the administrative process, or by the payment of a fine.

_____

[5]Although the amended complaint appears to allege tort claims by all the plaintiffs, that complaint, in substance, alleges claims related to only Todd, Graham, and Bush.

23

Further, neither the payment of a fine nor a refund of any such payment would appear to alleviate the damage associated with the independent tortious conduct the plaintiffs allege.

A.  The Plaintiffs' Tort Claims Against the City Defendants

As noted, the City defendants' mandamus petition addresses the dismissal of the plaintiffs' tort claims only in conjunction with its reliance on general mootness principles based on the plaintiffs' pleading failures and the cessation of enforcement of the ordinance -- a fact that the City defendants suggest mooted the entire action.  Thus, their petition does not present any specific argument or grounds establishing that those tort claims are moot, that there is no justiciable controversy, or that the trial court lacks jurisdiction to hear those claims.  As a result, we have no basis to grant the City defendants' petition insofar as it relates to those claims. We express no opinion as to the viability of those claims.  See Ex parte Brown, 331 So. 3d 79, 81 (Ala. 2021) ("The general rule is that, subject to certain narrow exceptions, the denial of a motion to dismiss is not reviewable by petition for a writ of mandamus. ... Furthermore, '[t]he denial of a Rule 12(b)(6)[, Ala. R. Civ. P.,] motion is not appealable unless

24

this Court has granted permission to appeal pursuant to Rule 5, Ala. R. App. P.' ").

### B. The Plaintiffs' Tort Claims Against JENOPTIK

For the same reason, JENOPTIK's assertion that the plaintiffs generally failed to state viable claims of negligence, invasion of privacy, and fraud against it is also not subject to mandamus review. See Brown, supra. We express no opinion on the general viability of those claims.

We note that JENOPTIK does, however, contend that, as a result of the plaintiffs' own purported lack of "standing," the trial court lacked subject-matter jurisdiction over the plaintiffs' tort claims. As support for that contention, it argues that all of the plaintiffs' tort-based "injuries [arose] out of their uncontested traffic violations" and that their complaint facially demonstrates the claims' lack of merit. JENOPTIK's petition at 20. As set out above, however, we are unconvinced that the plaintiffs' failure to contest the citations issued under the ordinance impacts either their claim of negligence in enforcing the ordinance while it remained in effect or their claims of invasion of privacy and/or fraud in connection with the alleged dissemination of the fact of a citation's issuance in purported conflict with the language of the ordinance.

25

Further, the authority JENOPTIK includes for its "standing" issue is both nonbinding on this Court and inapposite. Accordingly, JENOPTIK has failed to demonstrate a clear legal right to the dismissal of all of the plaintiffs' tort claims on this general basis. Again, we otherwise express no opinion on the viability of those claims.

## III. Alleged Lack of Personal Jurisdiction Over JENOPTIK

Finally, we are unable to conclude, in the case's present posture, that JENOPTIK successfully demonstrated a legal right to dismissal on the alleged basis of a lack of personal jurisdiction. JENOPTIK's motion to dismiss did include unsupported allegations as to the circumstances of the incorporation of JENOPTIK Smart Mobility Solutions, LLC, and JENOPTIK North America, Inc.; their affiliation with Traffipax, LLC; and the fact of the plaintiffs' service of those entities by certified mail at their corporate headquarters in Florida. The motion further alleged that JENOPTIK lacked sufficient contacts with Alabama to render it subject to either general or specific personal jurisdiction. Notably, however, a determination of personal jurisdiction over a corporation is fact-intensive. There is, at this point, simply insufficient evidence before the

26

Court to establish that JENOPTIK carried its burden demonstrating an

entitlement to relief on this basis at this time.

"This Court has explained the appropriate analysis and the parties' respective burdens on a personal-jurisdiction issue as follows. 'The plaintiff has the burden of proving that the trial court has personal jurisdiction over the defendant. <u>Ex parte Covington Pike Dodge, Inc.</u>, 904 So. 2d 226 (Ala. 2004).' <u>J.C. Duke & Assocs. Gen. Contractors, Inc. v. West</u>, 991 So. 2d 194, 196 (Ala. 2008).

"'"'In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, <u>a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits</u>, <u>Robinson v. Giarmarco & Bill, P.C.</u>, 74 F.3d 253 (11th Cir. 1996), and <u>Cable/Home Communication Corp. v. Network Productions, Inc.</u>, 902 F.2d 829 (11th Cir. 1990), and "where the plaintiff's complaint and the defendant's affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff." <u>Robinson</u>, 74 F.3d at 255 (quoting <u>Madara v. Hall</u>, 916 F.2d 1510, 1514 (11th Cir. 1990)).'"

"'<u>Wenger Tree Serv. v. Royal Truck & Equip., Inc.</u>, 853 So. 2d 888, 894 (Ala. 2002) (quoting <u>Ex parte McInnis</u>, 820 So. 2d 795, 798 (Ala. 2001)). <u>However, if the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction</u>, "the plaintiff is then required to substantiate the jurisdictional</u>

allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint." Mercantile Capital, LP v. Federal Transtel, Inc., 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002) (citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000)).  See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D. Del. 1995) ("When a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.") (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984)).'

"Ex parte Covington Pike Dodge, Inc., 904 So. 2d 226, 229-30 (Ala. 2004) (emphasis added; footnote omitted)."

Ex parte Excelsior Fin., Inc., 42 So. 3d 96, 103 (Ala. 2010).

The plaintiffs, as JENOPTIK concedes, alleged in their complaint that "JENOPTIK" is the "owner" of Traffipax, LLC, the entity that indisputably contracted with the City for the installation of the devices installed and operated -- in Alabama -- pursuant to the ordinance.  In support of its motion seeking dismissal of the plaintiffs' complaint, JENOPTIK, relying on the contracts providing for the installation and service of the devices, argued that "Traffipax, not [JENOPTIK], had the contract with the City ....  Thus, [JENOPTIK] has no contacts relevant to

this dispute within the state of Alabama and cannot be subject to general or specific personal jurisdiction." To the contrary, however, at least one of the contracts on which JENOPTIK relied below specifically provided that it was "made ... between Traffipax, LLC, a member of the JENOPTIK group, ... and the City." That language, along with the allegations in the plaintiffs' complaint, appears, <u>without an affidavit or some other evidentiary showing by JENOPTIK to the contrary</u>, sufficient to have survived dismissal on personal-jurisdiction grounds <u>at this time</u>. See <u>id.</u>

## Conclusion

Based on the foregoing, the City defendants and JENOPTIK have demonstrated a clear legal right to have the plaintiffs' claims challenging the legality of the ordinance dismissed as moot. Accordingly, we conclude that the trial court erred in denying the City defendants' and JENOPTIK's motions to dismiss in that respect and direct that court to vacate its order denying those motions and, instead, to enter an order dismissing the plaintiffs' claims challenging the legality of the ordinance. However, we deny the City defendants' and JENOPTIK's petitions challenging the trial court's order denying their motions regarding the

plaintiffs' tort claims and JENOPTIK's petition challenging the trial court's personal jurisdiction over it.

SC-2025-0247 -- PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

SC-2025-0251 -- PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

Stewart, C.J., and Wise, Bryan, Sellers, Mendheim, McCool, and Parker, JJ., concur.

Cook, J., concurs in part and concurs in the result, with opinion.

COOK, Justice (concurring in part and concurring in the result).

I concur in Part II of the main opinion. Specifically, I agree that the defendants have not demonstrated that the plaintiffs' tort-based claims would have been mooted by the City's passage of subsequent resolutions affecting the enforcement of the ordinance, by the plaintiffs' failure to challenge their citations pursuant to the administrative process provided in the ordinance, or by the payment of a citation. I also concur in Part III of the main opinion, holding that JENOPTIK failed to demonstrate a clear legal right to dismissal based on the trial court's alleged lack of personal jurisdiction.

However, I only concur in the result as to Part I of the main opinion, which concerns the mootness of claims challenging the legality of the ordinance. As to that issue, I write separately to explain why I would distinguish between (1) retrospective claims (for instance, claims seeking reimbursement of the fines) and (2) prospective claims (for instance, claims seeking declaratory or injunctive relief regarding the legality of the ordinance going forward).

Despite drawing a distinction between retrospective and prospective claims, I nonetheless concur in the result as to Part I because

31

the plaintiffs abandoned any argument that the challenged program was ongoing or likely to recur, making any claim for prospective relief moot.

In Part I of the main opinion, the Court correctly concludes that, under Woodgett v. City of Midfield, 319 So. 3d 1231 (Ala. 2020), Mills v. City of Opelika, 320 So. 3d 554 (Ala. 2020), City of Montgomery v. Hunter, 319 So. 3d 1213 (Ala. 2020), and Moore v. City of Center Point, 319 So. 3d 1223 (Ala. 2020), the plaintiffs' challenge to the legality of the ordinance is not justiciable for retrospective relief. Those cases hold that, when a plaintiff has either accepted liability under an ordinance by paying the imposed fine or by failing to challenge liability in the forum designated by the ordinance, a justiciable controversy ceases to exist. See Woodgett, 319 So. 3d at 1238; Mills, 320 So. 3d at 561; City of Montgomery, 319 So. 3d at 1223; Moore, 319 So. 3d at 1231. Based on this caselaw, I agree with the main opinion that the plaintiffs' claims for retrospective relief -- both their challenges to past traffic violations and their constitutional attack on the ordinance -- cannot proceed because the amended complaint either alleges that certain plaintiffs had paid the fines or fails to allege that the plaintiffs had pursued the prescribed review process.

32

However, I note that the <u>Woodgett</u> line of cases does not appear to expressly address a distinct question that I find to be important here -- whether a plaintiff may maintain a challenge seeking only <u>prospective relief</u> from future enforcement of an ordinance. Indeed, in <u>Woodgett</u> itself, one of the plaintiffs sought "an order enjoining the defendants from further ticketing individuals using automated photographic equipment." <u>Id.</u> at 1234. That is, the plaintiff presented a forward-looking claim for prospective relief. But the <u>Woodgett</u> Court did not undertake a separate analysis of that forward-looking claim. <u>See</u> <u>Woodgett</u> 319 So. 3d at 1238-39. As a result, in my view, our precedent leaves unanswered the question of whether a plaintiff who seeks only to restrain future enforcement of an ordinance may maintain such a claim even when retrospective challenges are barred.[6]

Federal precedent in a similar context recognizes a distinction between retrospective challenges to enforcement proceedings and

---

[6]The question of prospective relief also raises the problem of whether the administrative forum would even be able to grant such prospective relief to an alleged violator. And, what about a person who has not yet been cited for a violation by the speed or red-light cameras, how could they bring a claim for prospective relief? Why would such a claim be analytically different from a claim for prospective relief by an alleged violator who has paid a past fine?

prospective claims aimed solely at preventing future enforcement. For example, in <u>Olivier v. City of Brandon, Mississippi</u>, 607 U.S. 552 (2026), a street preacher was arrested for violating a city ordinance restricting expressive activity near a public amphitheater. In municipal court, the preacher pleaded no contest, paid the fine, and did not serve prison time. <u>Id.</u> at 556-57. Afterward, however, he still wished to continue preaching near the amphitheater without fear of future prosecution. Therefore, he filed suit under 42 U.S.C. § 1983, arguing that the ordinance violated his constitutional rights and seeking an injunction against future enforcement of it. <u>Id.</u> at 557. The district court held that the preacher could not maintain his suit because the judgment would have undermined his prior conviction, and the United States Court of Appeals for the Fifth Circuit affirmed that judgment based on the same reasoning. <u>Id.</u> at 558.

On appeal, the United States Supreme Court unanimously held that the preacher could maintain his suit based on "wholly prospective relief," despite his prior conviction. <u>Id.</u> at 561. The Supreme Court emphasized that he was not challenging the validity of his prior conviction or seeking monetary damages as a result of it. <u>Id.</u> at 563-64.

34

Moreover, the Court warned that a contrary holding would leave the preacher with the "untenable choice" to "violate the law and suffer the consequences …, or else give up what he takes to be his [constitutional] rights." Id. at 561.

However, in the case before us, the plaintiffs face an additional hurdle. Even if we could theoretically consider prospective relief, the defendants argue that such a claim is moot because of the cessation of the conduct. For example, in their motion to dismiss, the City defendants asserted that the City had "ceased the issuance of citations and other enforcement of the ordinance." In support of that assertion, the City defendants attached a copy of Resolution No. 2024-55 to their motion, which stated that "[a]ll enforcement procedures and all issuance of citations [from the ordinance] shall cease from and after July 11, 2024, until further action by the City Council of the City of Tuskegee." In their mandamus petition, the City defendants reasserted that "Resolution No. 2024-5[5] … altogether ceased the issuance of citations and all enforcement" of the ordinance. City defendants' petition at 18. JENOPTIK likewise asserted that "[t]he Ordinance is no longer being enforced." JENOPTIK's petition at 18.

Our Court has previously recognized that a showing of a defendant's "'voluntary cessation' of the challenged conduct can moot the action," but "[d]emonstrating that the action should be deemed moot on this basis, however, is not an easy burden." Barber v. Cornerstone Cmty. Outreach, Inc., 42 So. 3d 65, 71 (Ala. 2009). The party asserting mootness bears that burden of proof. See id. A case becomes moot only when it is "'"absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."'" Id. at 71 (quoting Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 222 (2000), quoting in turn United States v. Concentrated Phosphate Export Ass'n, Inc., 393 U.S. 199, 203 (1968)).

In response to the City defendants' motion to dismiss, the plaintiffs argued that the ordinance could be reinstated. But in their answers to the defendants' petitions for a writ of mandamus, the plaintiffs abandoned that position and instead asserted, repeatedly, that "[i]t is readily apparent that … the City terminated the photo generated traffic tickets" ordinance and that the City had "ceased the program altogether." Plaintiffs' answer to JENOPTIK's petition at 9, 20; Plaintiffs' answer to the City defendant's petition at 9, 19 (emphasis added). Because the

plaintiffs failed to reassert and develop their earlier contention, it is waived. See Ex parte Baldwin Cnty. Sewer Serv., LLC, 413 So. 3d 686, 691 (Ala. 2024) (explaining that this Court will not consider issues not properly briefed on mandamus review).

As a result, there effectively is no dispute that the City has "terminated" the ordinance. Accordingly, we need not decide whether a claim seeking wholly prospective relief would remain justiciable under the circumstances presented here. However, in an appropriate future case, I would encourage litigants to fully brief the question of whether prospective relief is available even if retrospective relief is unavailable because of a plaintiff's payment of a fine or failure to pursue the prescribed review process.